**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**CASE NO.: 19-CV-80215-KAM**

JAMES CECCHINI and ALBERT
OPPEDISANO,

        Plaintiffs,

vs.

CETERA FINANCIAL GROUP, INC.,
FIRST ALLIED HOLDINGS, INC.,
LEGEND GROUP HOLDINGS, LLC,
and LINCOLN INVESTMENT CAPITAL
HOLDINGS, LLC,

        Defendants.

_____/

## AMENDED COMPLAINT

Plaintiffs James Cecchini ("Mr. Cecchini") and Albert Oppedisano ("Mr. Oppedisano") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file this Amended Complaint against Defendants Cetera Financial Group, Inc. ("Cetera" or "CFG"), First Allied Holdings, Inc. ("First Allied" or "FAH"), Legend Group Holdings, LLC ("Legend"), and Lincoln Investment Capital Holdings, LLC ("Lincoln"), and allege:

**PARTIES,**
**SUBJECT-MATTER JURISDICTION,**
**PERSONAL JURISDICTION, AND VENUE**

1.      Plaintiff James Cecchini is a resident of Palm Beach County, Florida, and is a citizen of the State of Florida.

2.      Plaintiff Albert Oppedisano is a resident of Palm Beach County, Florida, and is a citizen of the State of Florida.

3.      Defendant Cetera is a Delaware corporation with its principal place of business in EI Segundo, California and thus, is a citizen of the States of Delaware and California.

4.      Defendant First Allied is a Delaware corporation with its principal place of business in San Diego, California and thus, is a citizen of the States of Delaware and California.

5.      Defendant Legend is a Delaware LLC.  Upon information and belief, no member of Legend is a citizen of Florida.  *Inter alia*, Legend has stated in court filings that its sole member is "a Delaware company."

6.      Defendant Lincoln is a Delaware LLC.  Upon information and belief, no member of Legend is a citizen of Florida.  *Inter alia*: a) Lincoln has stated in court filings in December 2017 that its principal place of business is in Fort Washington, Pennsylvania; and b) Edward Forst and Harry Forst are the only members and both reside in Pennsylvania.

7.      This court has subject-matter jurisdiction over this matter pursuant to 28 *U.S.C.* § 1332(a) as this matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

8.      Legend is subject to personal jurisdiction in this Court pursuant to *Fla. Stat.* § 48.193(1)(g) and the exercise of personal jurisdiction over this Defendant comports with the due process clause of the Fourteen Amendment.

9.      *Inter alia*, Legend terminated, and thus breached, the Agreement at issue from its principal place of business in Palm Beach Gardens, Florida.

10.     All Defendants except Legend are Legend is subject to personal jurisdiction in this Court pursuant to *Fla. Stat.* § 48.193(1)(b) and the exercise of personal jurisdiction over each of these Defendants comports with the due process clause of the Fourteen Amendment.

11.     *Inter alia*, each of the immediately foregoing Defendants committed tortious acts in Florida by communicating to Legend in Florida in an act of tortious interference with Plaintiffs' Agreements with Legend and/or committing same tortious acts outside of Florida producing an injury in Florida.

12.     Venue is proper in this district pursuant to 28 *U.S.C.* § 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

13.     Plaintiffs worked for Legend for many years. They were both recruited by the founder of the company in or about 1979 to help spearhead the firm's efforts to establish and expand the company's business in the 403(b)-retirement savings plan market in New York, primarily serving teachers, non-profit and public institutions.

14.     Legend's unique business model included recruiting and retaining Plaintiffs and other key partners by allowing them to "build their own business" running their own branch office and growing their footprint through individual payroll slot client relationships after establishing business relationships with school district employees, municipal employees, and union members.

15.     Plaintiffs built out their own respective branch offices and businesses in the Long Island, New York, area and in the Buffalo, New York and western New York area in reliance upon a unique opportunity described as "Legend Advisor Financial Security Program" (the "Program" or the "Agreement").  A copy of the most recent version of the Agreement is attached hereto as Exhibit "A."

16.     To incentivize and reward Plaintiffs for successfully building their own branch offices and expanding their business, the Agreement enabled Plaintiffs to "retire on active duty."

17.     In doing so, Plaintiffs would continue to maintain an active securities license, but they would retire their respective discrete books of business such that the social security numbers for all clientele they were responsible for helping accumulate and originate up until the date they retired that "book" were recorded, their override percentage would be reduced to 75% of the amount previously received and they could receive that small percentage override (on only that clientele) that was a product of their hard work while engaged in active solicitation efforts.

18.     According to the Agreement, the overrides were to continue for the Plaintiffs' lifetimes and their beneficiary (spouse's) lifetime (up to a maximum of twenty years after the Plaintiffs pass away).

19.     This lifetime override was a key component of the Agreement and it had the desired effect insofar as both Plaintiffs built substantial businesses and turned that business over to Legend to manage.

20.     The benefit to Legend was that Plaintiffs would have less financial reasons to take their business elsewhere to a competitor firm, and the clients, accounts, assets, fee revenue stream, etc. all remained with Legend and Legend servicing representatives continued to handle and manage that business at Legend for their own (and Legend's ongoing benefit).  Meanwhile, the Plaintiffs continued to receive a small percentage override on revenue derived only from the clients, accounts, assets, etc. that Plaintiffs had originated.

21.     The Agreement, and, in particular, the lifetime of financial security for themselves and their spouses were material promises that Plaintiffs relied upon in making their decisions to remain at Legend for their entire careers.

22.      After retiring their respective "books of business" with Legend in or about 2001, Plaintiffs refrained from going to work for another company, maintained their active securities

licenses with Legend, and followed any instructions they received from Legend's compliance department in order to maintain the overrides.

23.     Plaintiffs did their part to step away from the day-to-day business as provided by the Agreement, and also remained available as needed to support Legend's recruiting, retention efforts as they were both considered ideal examples for Legend to use to promote the unique incentives offered by Legend in a competitive marketplace.

24.     In addition, Plaintiffs stayed in contact (as necessary or requested) with school district personnel, union and other representatives that helped Legend and Legend servicing representatives retain and grow Legend business over the years, whether or not it had any direct impact on any of their originated business, as they served as loyal representatives of Legend when called upon over the years.

25.     Legend continued to adhere to the terms of the Agreement after it was sold to a publicly traded mutual fund and financial services company, Waddell & Reed in or about 1999.

26.     Legend continued to adhere to the terms of the Agreement after Waddell & Reed sold Legend in or about 2012.

27.     Shortly thereafter, it is believed Legend was sold to Defendant First Allied. and Legend continued to adhere to the terms of the Agreement.

28.     Defendant First Allied is, and was at all relevant times, owned by, controlled by, or otherwise affiliated with Defendant Cetera.

29.     As of 2016, Defendants Legend, First Allied, Cetera, and Lincoln were all aware of the Agreement and aware of Legend's ongoing financial obligations to the Plaintiffs.

## The Termination of the Agreement and Sale Of Legend

30.     On September 12, 2016, Legend (an LLC) communicated to Plaintiffs -- from its principal place of business in Palm Beach Gardens, Florida -- that it was terminating the Agreement, effective immediately.  A copy of the email-letter is attached hereto as Exhibit "B."

31.     Although the Agreement was purportedly terminated, Legend stated: "To the extent you are receiving overrides on any such accounts, be assured that you will continue to receive these overrides as long as you remain appropriately licensed."  See Exhibit B.

32.     On September 14, 2016, Cetera announced the signing of a definitive agreement for the sale of Legend by First Allied, a Cetera affiliate, to Lincoln.  See press release recital, attached hereto as Exhibit "C."

33.     On January 3, 2017 Cetera announced the completion of the sale of Legend "by Cetera affiliate First Allied" to Lincoln.  See Exhibit "D" hereto, announcement downloaded from www.cetera.com.

34.     From September 12, 2016 to approximately July 2017, Plaintiffs continued to receive their overrides, as stated in Legend's email-letter of September 12, 2016.

35.     On or about July 14, 2017, Plaintiff received a letter from another Lincoln entity, Lincoln Investment Planning, LLC stating that "there was no basis for past or ongoing payments to you of overrides" thus, "effective immediately, no further payments of these overrides will be made."  A copy of the letter is attached hereto as Exhibit "E."

36.     Accordingly, Plaintiffs filed a Statement of Claim for arbitration in the arbitration forum administered by the Financial Industry Regulatory Authority ("FINRA").  The sole respondent was Lincoln Investment Planning, LLC.

37.     In that arbitration, the President of Lincoln Investment Planning, LLC testified under oath that:

The Program (the Agreement) had been cancelled before Lincoln closed on the transaction to purchase Legend;

The termination email-letter of September 12, 2016 was completely at Cetera's direction, that Cetera was in charge [in fact, Cetera President Adam Antoniades, with Cetera counsel, drafted the termination letter]; and

It was Antoniades' requirement that the Program (the Agreement) be cancelled prior to closing.

## COUNT ONE
## BREACH OF CONTRACT AS AGAINST LEGEND ONLY

38.     Plaintiffs reallege paragraphs 1-37 as though fully set forth herein.

39.     Defendant Legend breached the Agreement by its purported termination on September 12, 2016.

40.     Plaintiffs have fully performed all of their obligations under the Agreement and have been damaged as a result of Defendant Legend's non-performance and breach.

41.     Any and all conditions precedent have been satisfied, met, or waived.

WHEREFORE, Plaintiffs demand a judgment against Defendant Legend Group Holdings, LLC for damages in excess of $75,000.00, together with interest, costs, and any further relief deemed just and equitable.

## COUNT TWO
## BREACH OF CONTRACT AS AGAINST LEGEND ONLY

42.     Plaintiffs reallege paragraphs 1-37 as though fully set forth herein.

43.     The letter of September 12, 2016 contained an offer of continued payment of overrides, that was accepted by Plaintiffs.

44.     The payments of overrides were made to Plaintiffs from approximately September 2016 to July 2017.

45.     When payments ceased in July 2017, Legend was in breach of the agreement to pay overrides.

46.     Plaintiffs have fully performed all of their obligations under the Agreement and have been damaged as a result of Defendant Legend's non-performance and breach.

47.     Any and all conditions precedent have been satisfied, met, or waived.

WHEREFORE, Plaintiffs demand a judgment against Defendant Legend Group Holdings, LLC for damages in excess of $75,000.00, together with interest, costs, and any further relief deemed just and equitable.

**COUNT THREE**
**BREACH OF CONTRACT AS AGAINST LINCOLN ONLY**

48.     Plaintiffs reallege paragraphs 1-37 and 43-44 as though fully set forth herein.

49.     During the period September 2016 to January 2017, Defendants Cetera and First Allied transferred Legend, along with Legend's assets and liabilities to Lincoln, including a) Legend's obligations and liabilities to Plaintiffs under the Agreement; and b) Legend's obligation to pay overrides according to the September 12, 2016 letter.

50.     As assignee, Lincoln is obligated to Plaintiffs for the obligations and breaches of the Agreement and the obligations and breaches of the September 12, 2016 agreement to pay overrides.

51.     Plaintiffs have fully performed all of their obligations and have been damaged as a result of Defendant Lincoln's non-performance and breach.

52.     Any and all conditions precedent have been satisfied, met, or waived.

WHEREFORE, Plaintiffs demand a judgment against Defendant Lincoln Investment Capital Holdings, LLC for damages in excess of $75,000.00, together with interest, costs, and any further relief deemed just and equitable.

## COUNT FOUR
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
## AS AGAINST DEFENDANTS CETERA AND FIRST ALLIED

53.     The Plaintiffs reallege paragraphs 1-37 as though fully set forth herein.

54.     The Plaintiffs had an Agreement and ongoing contracts and/or business relationships with Defendant Legend.

55.     At all times material hereto, Defendants Cetera and First Allied had knowledge of the Agreement and Legend's ongoing financial obligations to the Plaintiffs.

56.     Cetera and First Allied, *inter alia*, by and through their officer Antoniades, decided that the Agreement had to be terminated before the closing of the same of Legend to Lincoln.

57.     The termination email-letter of September 12, 2016 was at Cetera's and First Allied direction; *inter alia*, Cetera and First Allied officer Antoniades, with Cetera counsel, drafted the termination letter to be sent by Legend to Plaintiffs.

58.     Cetera and First Allied intentionally and without justification interfered with the Agreement and relationship between Legend and Plaintiffs.

59.     Plaintiffs have suffered and continue to suffer substantial damages as a consequence of Cetera's and First Allied's tortious interference with a business relationship of the Plaintiffs.

WHEREFORE, Plaintiffs demand a judgment against Defendants Cetera Financial Group, Inc. and First Allied Holdings, Inc. for damages in excess of $75,000.00, together with interest, costs, and any further relief deemed just and equitable.

## COUNT FIVE
## PROMISSORY ESTOPPEL AS AGAINST DEFENDANTS LEGEND AND LINCOLN

60.     The Plaintiffs reallege all of the allegations of paragraphs 1-37 as though fully set forth herein.

61.     Plaintiffs allege that, in the alternative, the Agreement and the Legend's statement that Plaintiff's would continue to receive overrides, were not enforceable contracts, but instead, were promises that Legend should reasonably expected to induce action or forbearance by Plaintiffs.

62.     The Agreement and override statement induced action or forbearance by Plaintiffs; *inter alia*: a) they did not transfer their book of business to a competitor; b) they performed acts required or helpful to Legend; and c) did not immediately sue Legend for non-payment, breach of the Agreement, or promissory estoppel.

63.     The Agreement and override statement are binding as against Legend because injustice can only be avoided by enforcement of Legend's promises.

64.     As transferee or assignee of Legend, along with Legend's assets and liabilities, Lincoln is liable for Legend's wrongful acts set forth in this Count.

65.     Lincoln was aware of the Agreement and override statement, caused payment to be made from January 2017 to July 2017, and thus, Plaintiffs were induced to forbear (including, but not limited to, filing suit), thus enforcement of the Agreement and override statement as against Lincoln is warranted and necessary to avoid injustice.

66.     As damages or equitable remedy, Plaintiffs demand judgment against Defendants Legend Group Holdings, LLC and/or Lincoln Investment Capital Holdings, LLC in excess of $75,000.00, together with interest, costs, and any further relief deemed just and equitable.

**JURY TRIAL DEMAND**

Plaintiffs demand trial by jury of all counts, claims, and issues so triable.


Dated April 23, 2019                                    Respectfully submitted,


                                                        _/S/ *Jason S. Haselkorn*_____
                                                        Jason Haselkorn, Esq.
                                                        Florida Bar No. 0052140
                                                        Matthew Thibaut, Esq.
                                                        Florida Bar No. 00514918
                                                        HASELKORN & THIBAUT, P.A.
                                                        359 South County Road
                                                        Palm Beach, Florida 33480
                                                        Attorneys for Plaintiffs



                        <u>CERTIFICATE OF SERVICE</u>

        I HEREBY certify that on April 23, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other or additional manner as set forth below.



                                                        _//S//_   *Jason Haselkorn*_____
                                                        Jason Haselkorn, Esq.

<u>SERVICE LIST</u>

**Alex Joseph Sabo , II**
Bressler Amery & Ross
200 S Biscayne Blvd
Suite 2401
Miami, FL 33131
Tel: 305-501-5485
Fax: 305-501-5499
Email: asabo@bressler.com
Attorneys for Defendants
CFG and FAH
Via CM/ECF

**Karl L. Marquardt**
Bressler, Amery & Ross
17 State Street, 34th Floor
New York, NY 10004
(212) 425-9300
Email: kmarquardt@bressler.com
Attorneys for Defendants
CFG and FAH
Via CM/ECF

**Samuel E. Cohen**
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, 23rd Floor
Philadelphia, PA 19103
215-575-2587
Email: secohen@mdwcg.com
Attorneys for Defendants
Legend and Lincoln
Via CM/ECF

**Terrance A. Bostic**
Marshall Dennehey Warner Coleman & Goggin
201 East Kennedy Blvd
Suite 1100
Tampa, FL 33602
813-898-1804
Fax: 813-221-5026
Email: tabostic@mdwcg.com
Attorneys for Defendants
Legend and Lincoln
Via CM/ECF



### Legend Advisor Financial Security Program – LEGACY Version

Unique to the industry, the Legend Advisor Financial Security Program ("Program") was created to present a solution which allows our Financial Advisors to exit the business gracefully, under the most favorable of conditions. "Financial Advisor", as used herein, mean a registered representative of Legend Equities Corporation, insurance agent writing business through Legend Equities Corporation and an investment adviser representative of Legend Advisory Corporation. Our program enables advisors to earn ongoing income based on accumulated assets under management. The program's benefits are designed to offer a lifetime of financial security to advisors and their beneficiary.

The following represents our program regarding payments to Financial Advisors following death, disability or cessation of active solicitation. Cessation of active solicitation means retirement from the financial services industry. Financial Advisor shall be ineligible to participate in the Program if he or she places their securities license(s) with another broker-dealer or engages in the active solicitation of insurance or investment advisory services following their termination of registration with Legend Equities Corporation (and affiliates, collectively referred to herein as "Legend"). Financial Advisor's eligibility to participate in the Program shall terminate in the event that he or she is or becomes statutorily disqualified, or directly or indirectly, solicits or causes any Legend client to do business with another financial services firm, or directly or indirectly solicits or causes any Legend client to terminate their relationship with Legend Equities Corporation or Legend Advisory Corporation.

The Program will be administered in the best interest of the clients. "Servicing advisor" shall be the person or persons properly licensed with Legend who are assigned by Legend to service the clients' accounts upon Financial Advisor entering the Program. The selection of a servicing advisor should be based on the notion of preserving and continuing Financial Advisor's compensation under the Program and retaining all clients' accounts at Legend. Legend shall have sole discretion in the selection of a servicing advisor(s) for the clients' accounts serviced by Financial Advisor upon entering the Program, and may replace servicing advisor(s) at any time in its sole discretion. Nevertheless, Legend shall use its best efforts and best judgment to comply with Financial Advisor's selection of a servicing advisor(s). Financial Advisor is advised to communicate to Legend in writing his/her selection of a servicing advisor(s) while still registered with Legend. Legend recommends that Financial Advisor seek to enter into a non-solicitation agreement with any servicing advisor(s) he/she selects. Legend shall not be a party to such non-solicitation agreement.

A Financial Advisor may enter the Program only if his/her prior calendar year's IRS Form 1099 from any Legend affiliate, or another firm, meets or exceeds $5,000.00. In order to remain in the Program, a Financial Advisor must earn at least $1,200.00 in IRS Form 1099 income from any Legend affiliate in every full calendar year he/she participates in the Program. Failure to achieve this minimum will result in permanent termination of the Financial Advisor from the Program and no commissions, fees or other income shall be payable thereafter. All provisions are incorporated into the Legend Equities Corporation Registered Representative Agreement, a bona fide contract, and are subject to current state and federal laws and industry rules and regulations. The provisions of the Legend Advisor Financial Security Program are intended to comply with FINRA IM-2420-2 with respect to equity commissions paid to Financial Advisor

LAFSP-001 –9/2014



**EXHIBIT**

A

p. 1 of 6



## Legend Advisor Financial Security Program – LEGACY Version

under the Program.  This Program is not a retirement plan, qualified or otherwise, but rather is a commission and fee continuation program.  Payments under the Program shall be treated as 1099 income.  By agreeing hereto, Financial Advisor agrees that this version of the Program replaces any and all prior versions, and Financial Advisor acknowledges receipt of Legend's Program Compliance Parameters, which outlines various prerequisites, restrictions and procedures related to the Program.  Legend may unilaterally alter the Program and/or the Program Compliance Parameters at any time, with no further liability to Financial Advisor or anyone claiming by or through him/her, in order to comply with applicable industry laws, rules, regulations, or other requirements and official guidance by any regulatory body or SRO.  Program Compliance Parameters are non-contractual but may be attached hereto for information purposes only.

### Death: Advisory & Custodial Fee Income

Upon the death of Financial Advisor, solicitation, investment advisory and custodial fee income ("Fees") will be paid to a named beneficiary for a period not to exceed 20 years from the date of death or entering the Program (whichever is earlier) unless the named beneficiary is the Financial Advisor's spouse at the time of death, in which case Fees will be paid for the spouse's life or 20 years as previously described, whichever is greater.  Financial Advisor may only name one beneficiary.  The beneficiary must be a natural person alive at the time Financial Advisor signs the beneficiary designation form, otherwise the beneficiary may be a validly formed trust.  The Fee income will be paid on any and all accounts of the decedent's clients at death, when such accounts were established by the client prior to Financial Advisor's death, at a rate equal to 75% of the rate paid to the deceased Financial Advisor under the effective compensation schedule at the time of death.  The amount will be paid only as and if Legend Advisory Corporation, and/or any applicable custodian, earns and receives the corresponding Fees.  The remaining portion of the Fee income normally paid to active Financial Advisors will be used to retain the business through the assignment of a servicing advisor.  Any Fee income being received by Financial Advisor on an override basis will similarly be paid at a compensation rate equal to 75% of the override rate paid to the deceased Financial Advisor receiving override Fees under the effective compensation schedule at the time of death.  In the event the servicing advisor establishes an advisory service, or any other fee based business, for any of the Financial Advisor's clients he is servicing under the Program, and such clients were not subscribed to any investment advisory service with Legend Advisory Corporation, or any other fee based business, on the date of cessation of active solicitation of the Financial Advisor, then the servicing advisor shall be compensated at a rate of 75% of the servicing representative's Fee compensation rate for such accounts, and remaining 25% shall be paid to the named beneficiary.

### Death: Insurance & Equity Commissions

No commissions will be paid on trades completed after Financial Advisor's death resulting from automatic salary reductions or deductions, automatic bank drafts or continuing trades of similar origin.  No insurance or equity override commissions will be paid to a decedent's estate or named beneficiary.

### Cessation of Active Solicitation/IAR Services: Advisory & Custodial Fee Income

LAFSP-001 –9/2014                                                                                        p. 2 of 6

Case 9:19-cv-80215-KAM   Document 18-1   Entered on FLSD Docket 04/23/2019   Page 12 of 20



**Legend Advisor Financial Security Program – LEGACY Version**

Upon the cessation of active solicitation or providing of investment adviser representative/solicitor services by Financial Advisor, Fee income will be continued to Financial Advisor as provided herein.  The Fee income will be paid on any and all accounts of Financial Advisor's clients after cessation of active solicitation, when such accounts were established by the client prior to cessation of active solicitation, at a rate equal to 75% of the rate paid to the inactive Financial Advisor under the effective compensation schedule at the time of cessation of active solicitation.  All amounts hereunder will be paid only as and if Legend Advisory Corporation and/or any applicable custodian earns and receives the corresponding Fees.  The remaining portion of the Fee income normally paid to an active Financial Advisor will be used to retain the business through the assignment of a servicing advisor.  Similarly, any Fee income being received by Financial Advisor on an override basis will be paid at a rate equal to 75% of the override rate paid to the inactive Financial Advisor receiving override Fees under the effective compensation schedule at the time of cessation of active solicitation.  In the event the servicing advisor establishes an advisory or fee based service for any of the Financial Advisor's clients he is servicing under the Program, and such clients were not subscribed to any investment advisory service with Legend Advisory Corporation or fee based business on the date of cessation of active solicitation of the Financial Advisor, then the servicing advisor shall be compensated at a rate of 75% of the servicing representative's Fee compensation rate for such accounts, and the remaining 25% shall be paid to the Financial Advisor.

At the discretion of Legend Advisory Corporation, a Financial Advisor may cease active solicitation of IA services while maintaining his or her securities registration with Legend Equities Corporation.  In such case, and upon written approval of Legend Advisory Corporation, all advisory clients previously serviced by Financial Advisor shall be thereafter serviced by the servicing advisor and Financial Advisor shall be compensated at a rate of 75% of the Financial Advisor's Fee compensation rate at the date of cessation of active solicitation of IA services.  In the event Financial Advisor solicits such clients for securities or insurance business, the servicing advisor shall be deemed the servicing advisor with respect to the new sales placed under the clients' social security numbers and will be entitled to 50% of the commissions according to the Financial Advisor's compensation rate at the time, with the remaining 50% payable to Financial Advisor.

**Cessation of Active Solicitation: Insurance & Equity Commissions**
Upon cessation of active solicitation by Financial Advisor, Financial Advisor will receive commissions on sales completed prior to cessation of active solicitation resulting in: 1) continuing automatic salary reductions or deductions, automatic bank drafts or continuing trades of a similar origin; 2) 12b-1 fees and commissions; and 3) insurance renewals.  Additionally, upon cessation of active solicitation by Financial Advisor, Financial Advisor will receive commissions on equity sales (not including VA) occurring after cessation of active solicitation and made by the servicing advisor for client accounts that were established by Financial Advisor prior to entering the Program.  The commission income will be paid at a rate equal to 50% of the rate paid to the inactive Financial Advisor under the effective compensation schedule at the time of cessation of active solicitation and will be paid on any and all accounts of Financial Advisor's clients at the time of Financial Advisor's cessation of active solicitation.  The amount will be paid only as and if Legend Equities Corporation earns and receives the gross commissions on these sales and accounts.  The remaining portion of these commissions normally paid to an active

Case 9:19-cv-80215-KAM   Document 18-1   Entered on FLSD Docket 04/3/2019   Page 13 of 20



## Legend Advisor Financial Security Program – LEGACY Version

Financial Advisor will be used to retain the business. No insurance override or equity override commissions will be paid to a Financial Advisor that has ceased active solicitation or providing of investment adviser representative services for Legend Advisory Corporation, and/or registration as a registered representative of Legend Equities Corporation. Financial Advisor must not solicit or open new accounts if he or she is not a registered representative licensed with Legend Equities Corporation. Subsequent to cessation of active solicitation, no commissions will be paid to Financial Advisor on new insurance sales (including VA) made by the servicing advisor for client accounts.

### Death after Cessation of Active Solicitation
If a former Financial Advisor dies following cessation of active solicitation and/or providing of investment adviser representative services as described above, advisory and custodial Fee income will be paid to a named beneficiary for the balance of 20 years from the date of the decedent's cessation of active solicitation unless the named beneficiary is the Financial Advisor's spouse at the time of death in which case Fees will be paid for life or 20 years, whichever is greater. The Fee income will be paid in the same manner and at the same rates, as provided upon the death of a Financial Advisor. At the time of the Financial Advisor's death, insurance and equity commission payments will be discontinued.

### Disability
Upon the disability of a Financial Advisor, Fee income and insurance and equity commissions will be paid to Financial Advisor in the same manner and at the same rates as provided above upon the cessation of active solicitation by a Financial Advisor. Upon receiving disability payments for 6 consecutive months Financial Advisor will be considered to have ceased active solicitation and/or providing of investment adviser representative services. Disability shall be defined in Section 72 of the Internal Revenue Code.

LAFSP-001 –9/2014                                                                    p. 4 of 6

# Legend GROUP.

## Legend Advisor Financial Security Program – LEGACY Version

### Program Compliance Parameters:

Legend's Compliance Department, in its sole discretion, may make exceptions to Program Parameters only after a determination that proper controls and supervision are in place to protect investors.

Financial Advisor must have been continuously registered with Legend for a minimum of three (3) years as of the date of entering the Program.  Alternatively, Financial Advisor must have been continuously a member of a team for not less than three (3) years as of the date of entering the Program, and that team must have been in continuous existence as part of that and (if applicable) a prior Firm for at least three (3) years as of the date of entering the Program.

Financial Advisor must demonstrate that he/she has conducted himself/herself in a manner exhibiting appropriate standards of professional and ethical conduct, which will be determined by Legend consistent with the following standards:

1.  Low incidence of investment-related customer complaints, arbitrations or litigation involving the Financial Advisor and either settled or decided for $25,000 or more during the three (3) years prior to the date of entering the Program.

2.  Low incidence of pending investment-related complaints, arbitrations or litigation during the three (3) years prior to entering into the Program.

If Financial Advisor has been named in investment-related complaints, arbitrations or litigation that have either been settled or decided for $25,000 or more during the three year period prior to the date Financial Advisor enters the Program, in order to be eligible, the Legend must

1.  Have investigated the complaints, arbitration and/or litigation,

2.  Have determined that the Financial Advisor's conduct does not merit any disciplinary action, or being placed on special or heightened supervision, and,

3.  Have determined in Legend's reasonable judgment that the Financial Advisor is not responsible for the conduct alleged in the complaints, litigation and/or arbitrations, or that they involved non-sales practice allegations.

The Financial Advisor must not be subject to a statutory disqualification resulting from any action of, or proceeding brought by the Securities and Exchange Commission or any self-regulatory organization for which the sanction is currently in effect (or was in effect during any part of the three (3) years prior to the date Financial Advisor enters the Program.

The Financial Advisor must not contact former clients for the purpose of soliciting such clients to enter into securities transactions, discussing any past, present, or future transactions with such former clients, or otherwise providing securities related services or advice to the extent the

LAFSP-001 –9/2014                                                                                            p. 5 of 6



## Legend Advisor Financial Security Program – LEGACY Version

services or advice relates to transactions in securities.  The Financial Advisor must acknowledge this limitation in writing.

The Financial Advisor must comply, to the extent applicable, with federal and state securities statutes and regulations, all policies, procedures and rules of relevant regulatory and self-regulatory bodies, including, without limitation, the SEC and FINRA.

The Financial Advisor must sever association with Legend and with any municipal securities dealer, government securities dealer, investment adviser or investment company affiliates (except as may be required to maintain any licenses or registrations required by any state) and is not permitted to be associated with any other broker, dealer, municipal securities dealer, government securities dealer, investment adviser or investment company, during the term of his or her participation in the Program.  The Financial Advisor also may not be associated with any bank, insurance company or insurance agency (affiliated with Legend or otherwise) during the term of his or her participation in the Program if the Financial Advisor's activities relate to effecting transactions in securities.

The Financial Advisor must certify at least annually to Legend that he/she has adhered to the requirements and conditions of the Program.

Legend will contact a representative sample of the account holders including a significant set of high grossing customer accounts subject to the Program at least annually to confirm that the Financial Advisor has not provided investment advice or solicited trades in securities in any way.  Prior to the date Financial Advisor enters the Program, Legend will inform the account holders of the applicable accounts in writing of the Financial Advisor's departure from Legend and of the transfer of the applicable accounts to the Servicing Advisor(s).

Servicing Advisor requirements:

Except as provided below, Servicing Advisor must have been employed in the securities industry in a registered capacity for a minimum of three (3) years as of the date Financial Advisor enters the Program.

Except as provided below, the Servicing Advisor must have been continuously affiliated with Legend in a registered capacity for a minimum of one year as of the date Financial Advisor enters the Program.  This one year requirement can be reduced to six months if Legend has established a transition period whereby the Financial Advisor works with the Servicing Advisor to jointly service the account holders who are subject to the Program.

If there is more than one Servicing Advisor who will be jointly servicing the accounts under the Program with the Financial Advisor, and one of the Servicing Advisors has less than three years of industry experience, or has been with the Firm less than one year, then that person can jointly service the client accounts of the Financial Advisor so long as Legend arranges for a more senior person to mentor that person for at least one year.

# Legend
## GROUP.

**Legend Advisor Financial Security Program – LEGACY Version**

The Financial Advisor must not be subject to a statutory disqualification resulting from any action of, or proceeding brought by, the SEC or any SRO for which the sanction is currently in effect (or was in effect during any part of the three (3) years prior to the date Financial Advisor enters the Program.

LAFSP-001 –9/2014                                                                                    p. 7 of 6

Case 9:19-cv-80215-KAM Document 18-1 Entered on FLSD Docket 04/12/2019 Page 17 of 20

| From: | Legend |
|---|---|
| Sent: | Monday, September 12, 2016 12:00 PM |
| To: | legend_all@legendgroup.com |
| Subject: | Legend Advisor Financial Security Program |

 

## Legend Advisor Financial Security Program

The Legend Group ("Legend") created the Legend Advisor Financial Security Program (the "Program") with the goal of assisting representatives through retirement. However, having recently completed a review of the Program, we have determined that it is no longer supported by regulatory guidance.

Accordingly, effective immediately, it is necessary to terminate all past and current versions of the Program. No advisors currently affiliated with Legend will be permitted to retire under the Program. While Legend has no obligations to continue the Program, we understand the challenges presented by this change and have worked closely with an Advisors' Council subcommittee in an effort to implement the best possible solution. If you are currently servicing accounts under the Program, you will receive a communication in the next few days, setting forth a plan to transition your arrangement to a fixed price buyout between you and the applicable retired advisor. To the extent you are receiving overrides on any such accounts, please be assured that you will continue to receive these overrides as long as you remain appropriately licensed.

In the coming months, we will also be sharing information regarding new succession planning tools and resources. These tools can be used to develop a

1



EXHIBIT
B

plan specifically tailored to your business and offer greater flexibility than a "one-size-fits-all" solution.

We understand that you must have questions. Please be assured that forthcoming communications will provide clarity and further details. In the meantime, we encourage you to reach out to a member of your Advisors' Council. Should you need to speak with us, please contact Regina Rudnick at rrudnick@legendgroup.com or 561-472-5706 or Cynthia Kleymann at ckleymann@legendgroup.com or 561-472-5731.

Thank you for trusting Legend with your business and for the privilege of helping you maximize its value as you plan for your future. We look forward to working with you to make this transition as smooth as possible, and will be in touch soon.


Sincerely,


Shashi Mehrotra, CFA
*CEO & President, The Legend Group*

  

**For broker/dealer use only, not for use with the public.**

A COMMUNITY FOR PROFESSIONALS IN PRIVATE CAPITAL

# PE-backed Lincoln Investment to buy The Legend Group

*September 14, 2016 By Iris Dorbian*

**Lincoln Investment Capital Holdings LLC**, which is backed by **Lovell Minnick Partners**, has agreed to acquire **The Legend Group Holdings LLC**, an independent broker/dealer and registered investment adviser. The seller is **First Allied Holdings**, an affiliate of **Cetera Financial Group**. No financial terms were disclosed. **Lazard** advised Cetera on the transaction.

PRESS RELEASE

Los Angeles, CA and Fort Washington, PA – Cetera Financial Group ("Cetera")*, a leading network of independent broker-dealer firms, and Lincoln Investment Capital Holdings, LLC, today announced the signing of a definitive agreement for the divestiture of Legend Group Holdings, LLC ("The Legend Group") by First Allied Holdings, Inc., a Cetera affiliate, to Lincoln Investment Capital Holdings, LLC. Financial terms of the transaction, which is expected to close by early next year subject to regulatory approval, were not disclosed.

Lincoln Investment Capital Holdings, LLC is the parent company of Lincoln Investment Planning, LLC ("Lincoln Investment"), a leading full-service independent broker-dealer and registered investment adviser. The Legend Group includes an independent broker-dealer and registered investment adviser focused on supporting the delivery of professional guidance by financial advisors to 403(b) plans, the retirement savings plan that is typically available to employees of public education organizations and non-profits across the country.



EXHIBIT

C

**Invest in a Multifamily REIT - Historical Returns of 15%+**
Invest in multifamily real estate through a diversified REIT.
upsideavenue.com

OPEN

Under the terms of the transaction, Lincoln Investment Capital Holdings, LLC will acquire the common interests and assets of The Legend Group Holdings, LLC. The independent financial advisors supported by The Legend Group will transition to Lincoln Investment and continue to leverage The Legend Group brand. The Legend Group's headquarters office in Palm Beach Gardens, FL, will continue to operate as part of Lincoln Investment.

"We are excited to welcome The Legend Group's financial advisors to Lincoln Investment as it pairs two well-resourced partners who share a longstanding commitment to the retirement plan market," said Ed Forst, president and chief executive officer of Lincoln Investment. "This is a transaction that enhances our scale, and by extension, our ability to remain independent, while positioning Lincoln Investment to compete more effectively in the mass affluent to high net worth investor space." Lincoln Investment received an investment in June 2015 from Lovell Minnick Partners, an independent private equity firm specializing in financial services and related business services companies in the middle market.

Mr. Forst continued, "The combined business will be over 1,100 financial advisors strong supporting over $30 billion in client assets and have a total of 100 years of industry experience, placing Lincoln Investment among the top 25 independent broker-dealers and RIAs in the U.S."

Robert Moore, chief executive officer of Cetera, said, "We are very pleased with this divestiture, which underscores our renewed focus to build upon our successful track record of helping advisors and institutions deliver holistic wealth management solutions for their clients on a full-service basis. As publicly disclosed earlier this year, our exploration of a potential sale of The Legend Group was guided by our plan to exit businesses that were not core to our future growth plans, combined with our commitment to identify a transaction opportunity with a company that understands and supports The Legend Group's unique strengths in the 403(b) plan space. We see this transaction as a very positive development for the advisors and institutions Cetera supports, as well as the advisors affiliated with The Legend Group."

**Invest in a Multifamily REIT - Historical Returns of 15%+**
Invest in multifamily real estate through a diversified REIT.
upsideavenue.com

OPEN

For this transaction, Lazard served as financial advisor to Cetera.

About Cetera Financial Group
Cetera Financial Group® ("Cetera") is a leading network of independent retail broker-dealers empowering the delivery of objective financial advice to individuals, families and company retirement plans across the country through trusted financial advisors and financial institutions. Cetera is the second-largest independent financial advisor network in the nation by number of advisors, as well as a leading provider of retail services to the investment programs of banks and credit unions.

Through its multiple distinct firms, Cetera offers independent and institutions-based advisors the benefits of a large, established broker-dealer and registered investment adviser, while serving advisors and institutions in a way that is customized to their needs and aspirations. Advisor support resources offered through Cetera include award-winning wealth management and advisory platforms, comprehensive broker-dealer and registered investment adviser services, practice management support and innovative technology. For more information, visit www.ceterafinancialgroup.com.

* "Cetera Financial Group" refers to the network of retail independent broker-dealers encompassing, among others, Cetera Advisors, Cetera Advisor Networks, Cetera Financial Institutions, Cetera Financial Specialists, First Allied Securities, Girard Securities, and Summit Brokerage Services.

**Beginners Guide To Options**

Ad

Download this PDF and discover the safe & simple

About Lincoln Investment
Lincoln Investment Planning, LLC is a leading full-service independent broker/dealer and registered investment adviser providing investment, wealth

and retirement planning services nationwide through a network of financial advisors.

The company currently has more than 300 employees and over 800 financial advisors with 300 branches in 34 states. Lincoln Investment serves over 270,000 individual investors, with over $24 billion in assets including over $10.6 billion in fee-based assets and provides retirement plan services to employees of more than 2,500 employers nationwide. For more information, visit www.lincolninvestment.com.

About The Legend Group
The Legend Group Holdings, LLC includes Legend Equities Corporation, an independent broker-dealer, and Legend Advisory Corporation, a registered investment adviser. The Legend Group empowers the delivery of quality investment solutions and personalized service by financial advisors with a primary focus on the 403(b) plan space. The Legend Group provides investment solutions for retirement, education savings plans, insurance needs, income generation and professional portfolio management. For more information, visit www.legendgroup.com.

These 6 Long-Term Stocks Could Help You Generate Regular Income

Ad ⌄

## Take your pick!

- **Buyouts** delivers exclusive news and analysis about private equity deals, fundraising, top-quartile managers and more. Get your **FREE trial** or **subscribe now**.
- **VC Journal** provides exclusive news and analysis about venture capital deals, fundraising, top-quartile investors and more. Get your **FREE trial** or **subscribe now**.

## RELATED STORIES



MENU

## DATE: 01.03.17

# Cetera Financial Group Completes Sale of The Legend Group to Lincoln Investment

**Los Angeles, CA and Fort Washington, PA** – Cetera Financial Group ("Cetera")\*, a leading network of independent broker-dealer firms, and Lincoln Investment Capital Holdings, LLC today announced the completion of the sale of Legend Group Holdings, LLC ("The Legend Group") by Cetera affiliate First Allied Holdings, Inc. to Lincoln Investment Capital Holdings. The transaction was first announced in September 2016. Financial terms were not disclosed.

Lincoln Investment Capital Holdings, LLC is the parent company of Lincoln Investment Planning, LLC ("Lincoln Investment"), a leading full-service independent broker-dealer and registered investment adviser. The Legend Group includes an independent broker-dealer and registered investment

**EXHIBIT**

D

MENU

adviser focused on supporting the delivery of professional guidance by financial advisors to 403(b) retirement savings plans, which are typically available to employees of public education organizations and non-profits nationwide.

Ed Forst, president and chief executive officer of Lincoln Investment, said, "We're very excited to complete this transaction, which reinforces Lincoln Investment's leadership position in the market for retirement plan advice.We welcome The Legend Group's financial advisors to the Lincoln Investment community, and we look forward to supporting them in growing their businesses by effectively providing the professional advice their mass affluent and high net worth clients need."

Robert Moore, chief executive officer of Cetera, said, "We are very pleased to close the sale of The Legend Group within our originally projected timeframe for completion.The completion of this transaction coincides nicely with the start of a new year and a new stage of growth for Cetera, characterized by our emphasis on delivering an advice-centric client experience for the retail investors supported by our financial advisors and institutions.We have entered 2017 with considerable positive momentum, and we're excited about our future."

For this transaction, Lazard served as financial advisor to Cetera.

## About Cetera Financial Group

Cetera Financial Group® ("Cetera") is a leading network of independent retail broker-dealers empowering the delivery of objective financial advice to individuals, families and company retirement plans across the country through trusted financial advisors and financial institutions.Cetera is the second-largest independent financial advisor network in the nation by number

MENU

of advisors, as well as a leading provider of retail services to investment programs of banks and credit unions.

Through its multiple distinct firms, Cetera offers independent and institutions-based advisors the benefits of a large, established broker-dealer and registered investment adviser, while serving advisors and institutions in a way that is customized to their needs and aspirations.Advisor support resources offered through Cetera include award-winning wealth management and advisory platforms, comprehensive broker-dealer and registered investment adviser services, practice management support and innovative technology.For more information, visit www.ceterafinancialgroup.com.

* "Cetera Financial Group" refers to the network of retail independent broker-dealers encompassing, among others, Cetera Advisors, Cetera Advisor Networks, Cetera Investment Services (marketed as Cetera Financial Institutions), Cetera Financial Specialists, First Allied Securities, Girard Securities, and Summit Brokerage Services.

### About Lincoln Investment

Lincoln Investment Planning, LLC is a leading full-service independent broker/dealer and registered investment adviser providing investment, wealth and retirement planning services nationwide through a network of financial advisors. The company currently has more than 300 employees and over 800 financial advisors with 300 branches in 34 states. Lincoln Investment serves over 270,000 individual investors, with over $24 billion in assets including over $10.6 billion in fee-based assets and provides retirement plan services to employees of more than 2,500 employers nationwide. For more information, visit WWW.LINCOLNINVESTMENT.COM.

### About The Legend Group

MENU

The Legend Group Holdings, LLC includes Legend Equities Corporation, an independent broker-dealer, and Legend Advisory Corporation, a registered investment adviser. The Legend Group empowers the delivery of quality investment solutions and personalized service by financial advisors with a primary focus on the 403(b) plan space. The Legend Group provides investment solutions for retirement, education savings plans, insurance needs, income generation and professional portfolio management. For more information, visit WWW.LEGENDGROUP.COM.

# # #

DOWNLOAD

**COMPANY**

ABOUT US

CAREERS

JOIN

**CONTACT**

MEDIA

CONTACT US

**WHO WE SUPPORT**

ADVISORS

INSTITUTIONS

ADVISOR NETWORKS

FINANCIAL SPECIALISTS



Privacy Policy

MENU





601 Office Center Drive, Suite 300
Fort Washington, PA 19034

TOLL-FREE:   800 242-1421
PHONE:       215 887-8111
FAX:         215 885-8113

www.lincolninvestment.com

July 14, 2017

Al Oppedisano
12773 Forest Hill Boulevard
Ste. 202
Wellington, FL 33414

Dear Al,

After due consideration, Lincoln Investment Planning, LLC has determined that there is no basis for past or ongoing payments to you of overrides.  Accordingly, this letter shall constitute a courtesy notice to you that effective immediately, no further payments of these overrides will be made.

This *does not affect any commissions which are otherwise payable to you on account of your personal book of business*.

Please give me a call if you have any questions.

Sincerely,

Ed Forst
President & CEO

**EXHIBIT**

E

Case 9:19-cv-80215-KAM   Document 18-1   Entered on FLSD Docket 02/13/2019   Page 2 of 2



601 Office Center Drive, Suite 300
Fort Washington, PA 19034

TOLL-FREE:   800 242-1421
PHONE:         215 887-8111
FAX:             215 885-8113

www.lincolninvestment.com

July 14, 2017

Jim Cecchini
136 Botanica Drive
Jupiter, FL  33458

Dear Jim,

After due consideration, Lincoln Investment Planning, LLC has determined that there is no basis for past or ongoing payments to you of overrides.  Accordingly, this letter shall constitute a courtesy notice to you that effective immediately, no further payments of these overrides will be made.

This *does not affect any commissions which are otherwise payable to you on account of your personal book of business.*

Please give me a call if you have any questions.

Sincerely,

Ed Forst
President & CEO