UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-80215-WM

James Cecchini and
Albert Oppedisano,

            Plaintiffs,

v.

Cetera Financial Group, Inc., and
First Allied Holdings, Inc.,

           Defendants.
_____/



FILED BY ____ D.C.

FEB 10 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED MOTION TO COMPEL [DE 94]

THIS CAUSE is before the Court on Plaintiffs' Renewed Motion to Compel Documents Responsive to Their First Request for Production of Documents to Defendants [DE 94]. Defendants responded to the motion [DE 100], and Plaintiffs replied to that response [DE 104]. Further, the parties have filed a Joint Notice [DE 106], as required by the Court. The Court held a lengthy hearing on the motion on November 22, 2019 [DE 108]. The Court has also carefully reviewed *in camera* the voluminous documents at issue which were withheld by Defendants as privileged. The matter is now ripe for review. For the reasons that follow, the motion is granted in part and denied in part.

### I. Factual and Procedural History

This case concerns two former employees, Plaintiffs James Cecchini and Albert Oppedisano, of Legend Group Holdings, LLC ("Legend"), a financial investment firm. Legend hired Plaintiffs to help establish the firm's 403(b) retirement savings plan market in New York. Legend's business model included recruiting Plaintiffs by allowing them to establish their own

branch offices under a Legend program called the Legend Advisor Financial Security Program ("LAFSP" or "the Program"). Under the Program, Plaintiffs set up branch offices of Legend in both Long Island and western New York. The Program also permitted participants to "retire on active duty" which allowed them to maintain their active securities licenses and entitled them to certain payments called "override percentages," albeit at a reduced rate, but required the "retired" employees to retire their books of business and not pursue additional clients. Pursuant to the LAFSP, the override payments were to continue for the retired employees' lifetimes and the lifetimes of their spouses.

Plaintiffs both chose to retire on active duty from Legend in 2001 and began receiving their promised override payments, despite Legend's sale to Waddell & Reed, another investment company, in 1999. Legend then changed hands again in 2012 but continued to pay out override payments to Plaintiffs. However, shortly thereafter, Legend was again sold for a third time, this time to Defendant First Allied Holdings, Inc. ("First Allied"). First Allied is owned and controlled by Defendant Cetera Financial Group ("Cetera").

In September 2016, Legend notified Program participants that it was terminating the LAFSP, effectively immediately. But Plaintiffs had no reason to suspect any suspension of their payments since Legend's notice stated that "[t]o the extent you are receiving overrides on any such accounts, be assured that you will continue to receive these overrides as long as you remain appropriately licensed."

Legend was then sold yet again in January 2017, this time by Defendants to Lincoln Investment Capital Holdings, LLC ("Lincoln"). Nonetheless, from September 2016 to approximately July 2017, Plaintiffs continued to receive their promised override payments from

Legend. However, on July 14, 2017, Lincoln notified Plaintiffs that it was terminating the Program as Lincoln had determined that due to "regulatory guidance" "there was no basis for past or ongoing payments to [Program participants] of overrides," thus, "effectively immediately, no further payments of these overrides will be made."

Plaintiffs refused to accept the discontinuance of their override payments and filed an arbitration claim against Lincoln. At that arbitration, Lincoln's President testified that the LAFSP "had been cancelled before Lincoln closed on the transaction to purchase Legend" from Defendants First Allied and Cetera, and further, that the termination email-letter "was completely at Cetera's direction" and that Cetera had required Legend to terminate the Program prior to closing. [DE 23 ¶ 37].

Following arbitration, Plaintiffs sued both Cetera and First Allied over the September 12, 2016 termination of the LAFSP and the ensuing July 2017 cancellation of Plaintiffs' override payments, alleging tortious interference with contract or business relationship.

## II. Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering the importance of the issues at stake, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and whether the burden of the discovery outweighs the likely benefit. It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules. Fed. R. Civ. P. 26(b)(1). However, Rule 26(b) allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prods. Liability Litig.*, No. 15–

2599, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, 2075 *Year–End Report on the Federal Judiciary* 6 (2015)); *Reuter v. Physicians Cas. Risk Retention Group*, No. 16-80581, 2017 WL 395242 (S.D. Fla. 2017). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, No. 15-1701, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016). The concepts of relevancy and proportionality are considered by the courts when determining discovery disputes. *See, e.g., All-Tag Corp. v. Checkpoint Sys., Inc.*, 408 F. Supp. 3d 1347, 1352 (S.D. Fla. 2019); *O'Boyle v. Sweetapple*, No. 14-81250, 2016 WL 492655, at *3 (S.D. Fla. Feb. 8, 2016).

### III. Analysis and Discussion

In the instant motion, Plaintiffs seek discovery of emails related to the purchase and sale of Legend, particularly those regarding the termination of the Program and the July 2017 cancellation of payments to Plaintiffs. Plaintiffs contend Defendants have improperly listed and withheld from production numerous emails on their Privilege Log. Following the November 22, 2019 hearing on the motion, and as agreed to by the parties, the Court directed Defendants to submit *ex parte* the emails identified in Exhibits A-F to the motion, so the Court could review *in camera* Defendants' assertions of privilege. The Court has carefully reviewed *in camera* the voluminous emails submitted *ex parte* to determine the validity of Defendants' assertions of privilege as to such documents.

#### A. Applicable Legal Framework Regarding Attorney-Client Privilege

The elements of the attorney-client privilege are: (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications

4

relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection may be waived. *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539, 2014 WL 4449451, at *3-4 (S.D. Fla. Sept. 10, 2014) (citing *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005)). If any one of these elements is missing—if the communication is not confidential, if it is not between the attorney and client, or if it does not relate to the matter of representation—the communication at issue is not covered by the privilege. *See Devries v. Morgan Stanley & Co. LLC*, No. 12-81223, 2013 WL 3243370, at *3 (S.D. Fla. June 26, 2013).

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982). But the privilege does not cover all communications between an attorney and her client. Rather, it has been "construed narrowly so as not to exceed the means necessary to support the policy which it promotes." *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The privilege is designed only to protect "confidential communications between the attorney and client regarding the matter of representation." *In re Grand Jury Matter*, 969 F.2d at 997.

"The burden of proof is on the party asserting the privilege to show that the documents in question are privileged." *United States v. Sigman*, No. 11-80155, 2013 WL 5890714, at *4 (S.D. Fla. Nov. 4, 2013). When advice given by an attorney relates to both business and legal matters, the legal advice must predominate for the attorney-client privilege to apply. *Blake v. Batmasian*, No. 15-81222, 2017 WL 10059251, at *4-5 (S.D. Fla. Oct. 5, 2017), *report and recommendation*

*adopted*, No. 15-81222, 2018 WL 3829803 (S.D. Fla. Aug. 9, 2018) (citing *Carpenter v. Mohawk Indus., Inc.*, No. 7-0049, 2007 WL 5971741, at *9 (N.D. Ga. Oct. 1, 2007)).

### B. The Federal Common Interest Doctrine as an Exception to the Rule of Waiver

The federal common interest doctrine, also known as the joint defense doctrine, "has a less-than-certain scope because it was never codified in any federal rule of evidence." *Del Monte Int'l GMH v. Ticofruit, S.A.*, No. 16-23894, 2017 WL 1709784, at *6 (S.D. Fla. May 2, 2017). The applicable case law establishes that "[t]he common interest is not, in and of itself, a *privilege*. Rather, it is an exception to the rule of waiver concerning the attorney-client privilege and the work product doctrine." *Id.* (emphasis in original); *see also Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 606 (S.D. Fla. July 16, 2013). The party asserting the common interest doctrine has the burden of establishing both the asserted common interest and the underlying attorney-client privilege. *Id.* The burden is necessarily a heavy one as "privileges are 'not lightly created nor expansively construed, for they are in derogation of the search for truth.'" *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011).

The common interest doctrine only applies "when the parties have a shared interest in actual or potential litigation against a common adversary, and the nature of their common interest is legal, and not solely commercial." *Breslow v. Am. Sec. Ins. Co.*, No. 14-62834, 2016 WL, at *9 (S.D. Fla. Feb. 19, 2016) (internal citations omitted); *see also Del Monte*, 2017 WL 1709784, at *6. The doctrine "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Spencer v. Taco Bell, Corp.*, No. 12-cv-387, 2013 WL 12156093, at *2 (M.D. Fla. Apr. 23, 2013) (internal quotation marks omitted). The parties' shared interest must be more than a shared interest in avoiding future litigation or "an attempt to allocate

6

the risk between parties to a commercial endeavor should such litigation occur." *Id.* at *3. Instead, the communications must have been "part of a shared litigation strategy" or developed "as an effort to arrive at a common defense to such possible litigation." *Id.*

### C. Application to this Case

With this legal framework in mind, the Court finds that, as to certain of the withheld documents, Defendants have failed to meet their burden of establishing the existence of an attorney-client privilege. A number of the documents at issue concern predominantly business or financial matters. Some of the documents contain no legal advice. Further, as to certain documents that appear to contain legal advice as to business and legal matters, the business aspect predominates.

The Court also finds that Defendants have failed to meet their burden of establishing that the federal common interest doctrine applies to Defendants' communications with non-party Lincoln. The communications between Defendants and non-party Lincoln primarily involve business and transactional matters dealing with the sale of Legend by Defendants to non-party Lincoln, and the effects of that sale upon participants in the LAFSP. The sale of Legend was an arm's length business transaction between Defendants as seller and non-party Lincoln as buyer. The communications at issue primarily deal with how Defendants and non-party Lincoln were planning to deal with business aspects of the sale and payments to participants in the LAFSP. The Court finds that the asserted common interest between Defendants and non-party Lincoln was largely commercial in nature. Such business communications are not part of a shared litigation strategy.

After a very careful *in camera* review of the voluminous documents at issue,[1] the Court finds that the documents withheld by Defendants are not all covered by the attorney-client privilege. Additionally, many of the documents concern business strategy and financial calculations regarding the sale of Legend by Defendants to Lincoln and how to deal with LAFSP participants, such as Plaintiffs. In fact, certain of the documents withheld by Defendants as privileged specifically mention Plaintiffs. *See, e.g.*, Ex. A, Entry 627, Bates No. 000094; Ex. A, Entry 1029, Bates No. 000098; Ex. A, Entry 1037, Bates No. 000101; Ex. A, Entry 1040, Bates No. 000105; Ex. B, Entry 1037, Bates No. 000122; Ex. B, Entry 1022, Bates No. 000243; Ex. B, Entry 1029, Bates No. 000250; Ex. C, Entry 398, Bates No. 000269-000272; Ex. E, Entry 394, Bates No. 000345; Ex. E, Entry 1022, Bates No. 000515; and Ex. E, Entry 1037, Bates No. 000520. Although some of these documents reflect a concern about litigation, they are in essence predominantly business communications and not legal communications. Further, many discussions contained in the withheld documents concern business matters or facts related to the effect of the sale of Legend by Defendants to non-party Lincoln. The Court finds that commercial issues predominate in many of the documents reviewed by the Court. Although some of the documents reviewed present an arguably close question, it is Defendants' burden to establish all elements of the attorney-client privilege and common interest doctrine. *See Del Monte Int'l*, 2017 WL 1709784, at *6. The Court finds that Defendants have failed to meet their burden as to the following documents, and accordingly the following documents shall be produced by Defendants to Plaintiffs:

---

[1] The Court had to review over 200 individual privilege log entries, consisting of over 550 pages, *in camera* in order to resolve this dispute. This *in camera* review was quite lengthy and time consuming.

**Bates Numbers of Improperly Withheld Documents Which Shall Be Produced**

**Exhibit A**[2]  All documents on Exhibit A shall be produced except 000011-000012 (Ex. A, Entry 634).

**Exhibit B**  All documents on Exhibit B shall be produced except 000164-000166 (Ex. B-3, Entry 580).

**Exhibit C**  Only Bates stamped pages 000265-000268 (Ex. C, Entry 398); 000269-000272 (Ex. C, Entry 406); 000285-000288 (Ex. C, Entry 756); 000290 (Ex. C, Entry 882); 000293 (Ex. C, Entry 898); and 000299-000301 (Ex. C, Entry 966) on Exhibit C shall be produced.

**Exhibit D**  Only Bates stamped pages 000322 (Ex. D, Entry 886) and 000323-000324 (Ex. D, Entry 918) on Exhibit D shall be produced.

**Exhibit E**  Only Bates stamped pages 000344 (Ex. E, Entry 364); 000345 (Ex. E, Entry 394); 000388-000391 (Ex. E, Entry 621); 000477 (Ex. E, Entry 878); 000480 (Ex. E, Entry 894); 000485-000486 (Ex. E, Entry 935); 000487 (Ex. E, Entry 952); the bottom portion of 000489 (Ex. E, Entry 954); 000490-000491 (Ex. E, Entry 954); 000492-000493 (Ex. E, Entry 960), the top half of 000494 (Ex. E, Entry 960); 000501-00502 (Ex. E, Entry 990); 000503-000506 (Ex. E, Entry 993) and 000510-000524 (Ex. E, Entries 1012, 1018, 1022, 1027, 1037, and 1044) on Exhibit E shall be produced.

**Exhibit F**  No documents on Exhibit F shall be produced.

### IV. Conclusion

In light of the foregoing, Plaintiff's Renewed Motion to Compel Documents Responsive to Their First Request for Production of Documents to Defendants [DE 94] is **GRANTED IN PART and DENIED IN PART**. Defendant shall produce the following documents to Plaintiffs **on or before February 17, 2020**:

---

[2] The Court's rulings as to which documents must be produced are organized by which Exhibit to Plaintiff's motion [DE 94] they are identified in.

1. All documents identified in Plaintiff's Exhibit A except 000011-000012 (Ex. A, Entry 634);

2. All documents identified in Plaintiff's Exhibit B except 000164-000166 (Ex. B, Entry 580);

3. The following documents identified in Plaintiff's Exhibit C: 000265-000268 (Ex. C, Entry 398); 000269-000272 (Ex. C, Entry 406); 000285-000288 (Ex. C, Entry 756); 000290 (Ex. C, Entry 882); 000293 (Ex. C, Entry 898); and 000299-000301 (Ex. C, Entry 966);

4. The following documents identified in Plaintiff's Exhibit D: 000322 (Ex. D, Entry 886) and 000323-000324 (Ex. D, Entry 918); and

5. The following documents identified in Plaintiff's Exhibit E: 000344 (Ex. E, Entry 364); 000345 (Ex. E, Entry 394); 000388-000391 (Ex. E, Entry 621); 000477 (Ex. E, Entry 878); 000480 (Ex. E, Entry 894); 000485-000486 (Ex. E, Entry 935); 000487 (Ex. E, Entry 952); the bottom portion of 000489 (Ex. E, Entry 954); 000490-000491 (Ex. E, Entry 954); 000492-000493 (Ex. E, Entry 960), the top half of 000494 (Ex. E, Entry 960); 000501-00502 (Ex. E, Entry 990); 000503-000506 (Ex. E, Entry 993) and 000510-000524 (Ex. E, Entries 1012, 1018, 1022, 1027, 1037, and 1044).

**DONE and ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of February 2020.

WILLIAM MATTHEWMAN
United States Magistrate Judge